Good morning, everyone. Welcome. Before I call our case for argument this morning, I need to announce that Judge Grosvenor is unavailable to participate in the oral arguments this morning, but she will listen to the recording and will participate in the decision of this case. And with that, I'll call our case for argument this morning United States versus Royal page. Thank you, Chief Judge sites and may it please the court Vanessa Eisenman on behalf of Royal page. The threshold issue in this appeal is whether there was sufficient evidence to convict Mr. page of conspiracy. I actually want to take you to the other issue that you raised and that is the focus of our on box today. I have I have 2 questions. Let me lay the framework a big part of our inquiry is. Whether a buyer seller instruction is supported by the evidence. Another way we've said it is that it has some foundation in the evidence. And so, for that, we have 2 considerations. We look at 1, whether page bought forth a buyer seller theory at trial. And to what a holistic review of the evidence shows Douglas ask you, we have it in a bunch of cases. So, I want to talk to you about that 1st consideration. Okay. What does it mean for a defendant to bring forth or present? A theory at trial, you know, in your brief. That page did not formally present and you use the word formal and you put present in quotes formally present. A buyer seller theory, and I take you to mean that he didn't put it on a platter. He didn't proclaim here you here. You here is my buyer seller theory. I'm now going to make a buyer seller argument to you. I don't take you to mean that the evidence and the argument. Did not come out at trial. So I have 2 questions that flow from this 1. am I understanding you correctly? In light of your notes in your brief, that buyer seller is not an affirmative defense and in light of Alana. So I do want you to address Alana. Am I understanding you correctly that the question is not whether he formally presented the theory. But what the evidence shows about whether the theory was present at trial. So that's my 1st question. Then my 2nd question after you finish, I want to take you to some specific pieces of evidence and ask you some questions about that. Sure. The short answer is yes, you are understanding me correctly. I don't want to, you know, he did not present the buyer seller theory. I fully admit to that. We can see that he never said buyer seller. That's nowhere in the trial transcript. But that, as you pointed out is not the issue. It all comes down to the evidence. You are, if a jury could find for a defendant on a material issue, the defendant or the jury must be instructed on that issue. That's all over every single case. And that comes down to what the evidence is not what the theory is. A defense counsel doesn't have to say anything throughout trial. All they have to do is show or the government has the entire burden of proof. So that's why it doesn't all come down to the theory of defense. Now, there's some language and ask you and there's some language in. Forget what other case it was, but and ask you, it says it cuts in favor presenting that not presenting a theory and ask you cut in favor of a finding that the jury instruction didn't need to be given. I think if anything needs to be clarified by this court on bond, it's that because even after ask you says that it still goes on to analyze the evidence because we have to give jury instructions based on the evidence. So, let's let's turn to my 2nd question then, because if I'm reading the government read correctly, so the question is, okay, where do we look for this evidence? We have a case where the defendant doesn't testify. You've got to look for the evidence somewhere else. And if I'm reading the government's brief correctly, even the government agrees with the case law that we have to look at defendant's closing argument and the cross examination questions to see where if at all. The defendant presented a buyer seller theory and to see whether the theory has some foundation in the evidence. So, you and the government seem to agree on the sources we need to look to. So, I want your response on some of the government things the government points to in the evidence. For example, in the brief, the government says pages, closing argument. Focused on his innocence rather than advancing a buyer seller argument, but that doesn't tell the whole story. Does it? Because. Pages counsel says, and closing argument. According to the prosecution and the evidence presented again, the focus on the evidence page is basically a low level dealer. So, there's this moment in the closing argument where where defense counsel says the evidence presented shows page is basically a low level dealer. He doesn't want to make the government's argument for him. But commenting on that, and then pages, counseling, closing argument goes on about personal use versus distribution quantities and how a government and a user or a dealer would disagree on what quantity is what all of that is only relevant. To the question of whether page was buying for personal use. Or for individual sale to his own customers. Versus a distribution part of a conspiracy. The government on brief talks about pages cross examination of the case agent. But seems to me doesn't talk about how page ask the agent about the difference between personal use quantities and distribution quantity relevant to the same question above. And then just as a final example, the government says pages cross of Hamlin didn't ask any questions that focused on a buyer seller relationship with him versus a conspiratorial relationship. But, you know, the government is missing the part of pages closing where he analyze analogizes page. To a customer preferring to buy in bulk. At Costco, or Sam's club club for the savings and the security, not because pages in a conspiracy with Hamilton. I'm asking you this question because you all filed simultaneous brief. So I am asking you when we look at the evidence presented in light of what's in the record. Why isn't all of this more than enough to conclude that page indeed presented a buyer seller theory at trial. And therefore, as the question properly stated, is the theory indeed has some foundation in the other. Yeah, I mean, I think you make a good point at no time. Did he ever concede that page was guilty of conspiracy and the closest you can. I mean, you're a trial lawyer, right? I am not. Have you ever tried a case? I have helped on a trial. Would it be weird for defense counsel a case like this to argue to the jury? My entire theory of the defense is that is not my guy on the phone. My guy is innocent. He was not on the phone. He doesn't know Hamlet. But if he did, he just engaged into a buyer seller relationship with him. So, quit him of the conspiracy charge, but can victim accounts to through 12. Yeah, I don't know trial lawyer would ever make that argument. I disagree. I disagree. I alternative defenses are entirely permissible. And if I were a trial lawyer, I certainly would have made that argument walk your guy into a conviction on 11 counts. You're not walking them into a you're not walking them into a conviction. You're saying that we have shown that he wasn't the guy. But even if you are inclined to believe Mr. Hamlin, that he is the guy, he still doesn't get convicted of the most harshest charge that there is in this. The only one that carries a mandatory minimum, the only one that has a maximum of 40 years and don't be victim on that. The exact same sentence are usually trial lawyers talk to their clients about the client is worried about what sentence am I going to get? If it's the exact same sentence, they got to win the case across the board. You don't tell your client. This is actually to be good for you. We're going to win the conspiracy. You're going to get convicted that every other time you go to jail for the exact same amount of time. Most clients do not accept that. But what we're looking at here is, should the district court do what the district court did in Hidalgo Sanchez, which is at the final jury instruction conference say, hey, this is a drug conspiracy case. We have this instruction, this buyer seller instruction that is relevant to a lot of drug conspiracy cases. What put the district court on notice here that it should have raised that? Because as Judge Kirsch pointed out, your theory of the defense seems contradictory to a buyer seller. The main theory of the defense was the cooperator here is lying. My guy didn't do this, which is different than, oh, I'm only in a buyer seller relationship with them. It's not a conspiracy. You never asked for the jury instruction. What puts the district court on notice here that it's something the court should consider? Because it's a drug conspiracy case. It's your position that in every drug conspiracy case, it's on the district court to raise this if the defendant doesn't raise it. It's my position that just like we asked district judges at sentencing hearings to ask the defendant, if I have gone through all your mitigation arguments to get a Cunningham waiver, district judges should do the same thing in every drug conspiracy case, just like the district judge did in Hidalgo Sanchez and say, this is a drug conspiracy case. Do you want a buyer seller instruction? And if the defendant says no, then you have a limiting principle on that. I'm sorry. What is the limiting principle? Is it the district court's job? If they think there might be an ostrich issue to raise specifically, do you want an ostrich instruction? If there's some other theory of the defense where there's not a pattern instruction, is it the district court's job to say, well, counsel, your cross examination suggests that this is the theory of your defense. Do you want to put in a jury instruction on that? Where do we draw the line? We draw the line because the buyer seller instruction is a critical component to the definition of a conspiracy. That's what the government loves direct sales. I have no problem with direct sales. This is a key distinction. We I want to go back to my question, which my second question, which was the answer, which was about the evidence. Doesn't the evidence here put the government on notice? I mean, the district court on notice. We have our circuit has outlined what are the indicia of conspiracy? And if you go down the line, checking them all, are they all checked? Are they all checked in a strong fashion? Are they all checked in a weak fashion? Does the weakness of the conspiracy evidence put the district court on notice? Yeah, absolutely. It does in that regard. It would not be a blanket rule. Then I don't see the harm in a district judge in every drug conspiracy case, raising this issue at the final jury instruction. What about entrapment in fraud cases? What about entrapment? Should a judge have to raise? Do you want an entrapment? I'm only talking about drug conspiracy cases and the buyer seller instruction, which is critical to what a conspiracy is and what it isn't. It's a definitional instruction. It is not a theory of intent. What about intent fraud cases? Government has to prove I'm not I'm not talking at all. I know you're not because you can't because your solution is unworkable. No, it's not. Hidalgo Sanchez did this exact same thing. Are there any other? Are there any? Wait, wait, let me ask my question. Are there any other cases in America in any state courts or any federal courts that you can cite to that say in any drug conspiracy case? The district judge must inquire the defendant whether they want to buy or sell it. I don't want that. No, because that's not what I said. I said we should instruct district judges that they should do this so that we're not under this posture anymore. If they don't do it, that's fine. Then we're under Rule 52B, which is where we are. I'm going to say that it's not a theory of the defense instruction because that's what our law says it is. No, it doesn't. It says a conspiracy. We have consistently said that the buyer seller instruction is a theory of the defense instruction. Because we have to change our law to that extent. No, because it is in with the other conspiracy instructions. It is an essential distinction of what a conspiracy is and what it isn't. It can also be the theory of defense, but it doesn't have to be. It's really definitional. It's an essential element. That's what direct sales says. Can we go back to where we started the conversation with U.S. versus ASCQ? That case, if we lay it against the context of where we are as far as today, we're here on plain error. You have accepted that the buyer seller theory was not presented. And so the question that I'm looking at ASCQ, the second step of that case was when we're evaluating the evidence, could a jury rationally have looked at this evidence and potentially convicted, in this case, page of buyer seller and not conspiracy? Can we walk through it? Because how is this workable? What would the district court, in your opinion, have been looking at the same evidence and deemed it not necessary to give the instruction? So what evidence would the district court should have been listening for or looking for to be able to answer this question? Because in essence, what I'm hearing you say is that if buyer seller is a support for a drug conspiracy, then you must give the buyer seller instruction. If there is evidence upon which a jury could find that the relationship was a buyer seller relationship and not a conspiracy, you have to give the instruction because it is not intuitive for jurors to know about that distinction. That's the purpose of the jury note in Douglas. The jury had a note that said, if somebody is buying drugs from a conspiracy, is that enough for them to join a conspiracy? It's somewhat difficult here when the judge is asked the question of the lawyers who are to present their cases. Are there additional jury instructions necessary? Yes, and I agree. Like, defense counsel should have requested this. We have never said in our brief that this is not primarily the job of defense counsel to do this, but that's not where we are. It's a forfeited error. So that's why we have this burden under Rule 52B, and that's why we take on that burden. But under 52B, if a legal rule is violated, it doesn't say if the district judge was alerted to something or was not alerted to something. It says if a legal rule was violated and it affects substantial rights, then you have a right to release. In fact, counsel, doesn't the rule specifically state, 52B, that it's when the court isn't alerted to an issue? Yes, it assumes this. Getting back to what Judge Kearse and Judge St. Eve asked, because I think they're really important concerns, kind of the concept of limiting principles and whatnot. I take it that what we're focusing on here is trying to better define what the government has the burden to prove at trial to obtain the conviction as opposed to an affirmative defense like coercion or duress or entrapment. We're talking about something that is part and parcel of the government's burden of proof. And so the concern that the district court might somehow usurp the role of a defense counsel by suggesting defenses that defense counsel hasn't really recognized or affirmative defenses, I think, should be somewhat mitigated by the fact that here what we're talking about is talking about how to better define the government's burden. Absolutely, absolutely. And I don't think that the government will disagree with that. So you don't expect like if a judge sees a potential entrapment defense that the defense counsel doesn't raise, your rule wouldn't require the judge to respond to a given entrapment defense? Correct. And again, all I'm suggesting is that this court sitting on bunk should say to district judges, hey, we don't love the posture that this case and other cases like it is coming to us. So we suggest, just like we suggest with Cunningham or Cunningham waivers in sentencing, at sentencing, we suggest that you bring this up in drug conspiracy cases. There's a contradiction, though, Ms. Eisenman, between grounding the jury instructions in the facts where you started and then having a blanket rule for the circumstance. Reading the transcript, it's very difficult to see what else the district court could have done. Ms. Hoffman responds, no, we have nothing more. Mr. Cornier responds, and nothing based on the testimony provided and the evidence and the exhibits provided. Based on that, I don't see anything else that's needed. It just puts the district courts in this untenable position of not being able to rely on the evidence as the basis. If they have to do a blanket rule, we're doing a blanket rule all the time and then distancing themselves from the evidence. Yeah, I disagree. It's the same way. I'm sorry I keep talking about Cunningham, but that's the best way my brain kind of thinks about the analogy a little bit here. We have said that at sentencing, the district judge can't just say, is there anything else, counsel? And that's not enough for a Cunningham waiver, right? We encourage the district judges just in this important issue to say, did I address all of your mitigating factors? And we just suggest that district courts do that. If they don't, then that's fine. Then we deal with it under a different standard of review, right? But we would suggest to district courts that in drug conspiracy cases, when there's any thought that there might be evidence to support a buyer seller, you at least ask the defense counsel. Because in this case, Judge Kirsch is correct. Then maybe the defense counsel here says, no, I don't want that. Just like Hidalgo Sanchez. And then we're only here on sufficiency of the evidence. We're not here talking about jury instruction. I understood your argument to be stronger than a request for a Cunningham rule. The Cunningham rule is essentially a safe harbor. It's not an affirmative obligation for trial judges to offer anything or to step in and seize control of the defense. And again, I agree with that. At the jury instruction conference by suggesting that the evidence might support a buyer seller instruction and taking a waiver from the defense counsel. You're imposing a sua sponte or asking us sitting on bond to impose a sua sponte duty to offer a buyer and seller instruction. No, I am not. I am not. I'm saying. Important clarification. Sorry. I really apologize for that. What I'm saying is that this court could suggest to district judges that if they want that safe harbor, similar to what they have for Cunningham, that they could bring this up. But didn't Judge Scudder do that? Didn't Judge Scudder? I mean, Judge Brennan just read what happened. Didn't Judge Scudder comply with your Cunningham rule? He didn't use the word buyer seller, but he said, is there any other instruction? Is there any other instruction you want defense counsel? No, because a buyer seller instruction in this case would be outrageous. I would be sued for ineffective assistance to counsel. No, I don't want anything else, Judge. But what you're saying is the judge has to specifically say buyer seller. You're going way beyond Cunningham. I'm not. I'm saying the judge could have said, OK, we'd have 510. Does anybody want 510-8? Well, he could have gone through every instruction in the book, starting with 101. There's a very small set of conspiracy instructions. There's a very small set, and they're just talking about the definition of the conspiracy. I'm concerned that we're talking about a blanket rule when the evidence in this case was coming out and the district court was listening to the evidence, as well as everybody else in the courtroom. So two things. One, we need to pin down the theories that Page was asserting at trial. He presented, by my reading of the record, two theories. One, I did not buy and sell drugs. And, two, if I did, I bought and sold drugs for, A, personal use, or, B, for distribution to my own customers, but not, C, distribution in a conspiracy with Hamlin. Isn't it left to the jury to then decide whether drugs were bought and sold, first question, and then, two, to decide was there an agreement to further distribute the drugs down the line with Hamlin? And so it may seem conflicting, but couldn't the jury have decided this in a way that provides for consistency across the board? And the district court is sitting there hearing this come out and is, therefore, aware. As you say, it's a small set of conspiracy instructions. Here's the evidence I'm hearing. Yes, it really does all come down to the evidence. Again, you know, that's where we are here. The question is, was a legal rule violated? And the legal rule is, if a jury could find for a defendant on a material issue, the jury must be instructed on that issue. It's not about the district judge. It's about whether the jury received an instruction. Where does that rule come from? That's from… Forget about buyer and seller for a moment. Okay. And think about a potential entrapment instruction. Suppose the evidence would support an entrapment instruction, but the defense never asks for one. Must the judge give it? If it's an affirmative defense, then it's a different analysis. This is not an affirmative defense. This is not something that… Suppose it's a lesser-included offense instruction. I'm sorry? Suppose it's a lesser-included offense instruction. That's certainly not an affirmative defense. The defendant is charged with murder. There's a potential for a manslaughter instruction. Defense never asks for a manslaughter instruction. Must the judge give it? No, because it's different because a conspiracy and a buyer-seller theory… I'm not… I told you I'm not asking about a buyer and seller instruction. We are here on bond. We need to resolve general principles, right? One general principle is under what circumstances must a judge give an instruction supported by the evidence and not requested by the defense? That's why I'm asking you now about a lesser-included offense instruction. How should that be approached? It does not have to be given because it is not an essential element of the charge. But it deals with the elements of the charge. What struck me about this case is you're not contesting the elements instruction. The jury was properly instructed on what must be shown to prove conspiracy. This is fundamentally a theory of defense instruction, just like a lesser-included offense instruction. We can't answer the question here in isolation from other kinds of instructions. If you want us to ignore all the other things affected by our decision, it won't help us. That's why I'm asking you for your view on these other matters. My view is I disagree that this is a theory of defense instruction. It defines what a conspiracy… You have said it is. It obviously is. If you just deny the premise of the question, you cannot give an influential answer. Okay. Again, we're under Rule 52B, the question under Rule 52B. Is this fair, a legal rule that was violated, and did it affect the defendant's substantial rights? It wasn't plain. That's even a bigger problem for you that we haven't even gotten into. Okay. Well, the G case says that it doesn't have to be a theory of defense for it to be a plain error. It doesn't have to be because it all comes down to the evidence. It's a little bit different because the court there acknowledged how weak the evidence of the conspiracy was because the court wouldn't grant the Santiago proffer. That is true, but that's not the basis for the decision. The court makes the decision. That would influence the decision. No, I disagree with that. The court makes the decision, and then it says… We read the case differently because that's how I read it. And then it says, moreover. It says, moreover. Like, hey, and if that weren't enough… Wibbling with the questions really gets you nowhere. You have to engage in the give and take rather than refuse to do that. There is nothing in Rule 52B that says that this analysis depends on whether the judge was alerted to something. Then cases like the Greer case would never come out the way they did. Let me ask you this because to me, whether or not the judge has some inkling based upon the evidence or based upon defense counsel request that an instruction like this should be given is something that is relevant to the 52B analysis. But I'm wondering whether, number one, you agreed that it's relevant because it certainly seems, at least from the questions here, that it might be. And number two, if it's relevant, where in the 52B analysis is it, and how should we weigh it? And so can you – we're here for 52B. Can you go through the various factors of 52B, whether error was plain, whether it affected Mr. Page's substantial rights, and then, of course, whether it seriously affected the fairness of the proceedings? And as you go through it, can you talk to us about if and how a judge kind of knowing that this defense is a possibility might factor into that analysis? Yeah. Well, according to our case law as it stands right now – and again, I said if there's one point to clarify, I think it's this one. It is that whether the judge is alerted, if it's a theory of defense, right, ASCII says that that cuts in favor – if there's no theory of defense, ASCII says that cuts in favor of finding that it's not a plain error. So we're under that step two of the 52B analysis, right? But ASCII then goes on to say it's not dispositive. So it's neither necessary nor dispositive to find a plain error because it really comes down to the evidence. ASCII says after we've said, okay, this is a negative in the defendant's favor because this theory wasn't presented, we still have to look to the evidence and see if the evidence would be sufficient to support this because if it is, then there needed to be an instruction. And in the ASCII case, there wasn't enough evidence. How does it play into your analysis and your response to Judge Lee's question that the theory of defense here was contradictory to a buyer-seller instruction, that the theory that I didn't do any of this, Hamlin is lying? So how would that impact? You can continue answering Judge Lee's question. I'm just adding a tweak to it. Sure. And I'm sorry. I'm trying to engage with your questions. What I think it would be is that you'd still have to say, okay, that's, again, this cuts against it, right? But it's not dispositive because it really does all come down to the evidence. And we don't – there's nothing in 52B that says that a defense counsel has to do a certain thing in order for this court to grant relief. So I don't think that that's dispositive of it. Then when you get down to the third step about the substantial rights, that's when I was talking about how critical this is to the definition of a conspiracy. That's where that kicks in, right? This court has done a really nice job in its jury instruction, building on direct sales, building on all the cases that we've had, and coming up with a good jury instruction that really leaves it up to the jurors to decide this. And it's rejected that certain factors have to be there. It said, listen, the agreement is the essential evil, and that's what we have to leave up to the jury. But we still have to tell them that what they're seeing as an agreement to buy and sell drugs, that's not what we're talking about when we say conspiracy. So I really like the jury instruction that we have. I know the jury instruction committee has spent a lot of time on it, and I think it's really good. And the problem is that it wasn't given in this case, not that there's anything wrong with it, not that we need to start over, not that we need a new list of factors, not that we have to add anything about this being a theory of defense. If there's enough evidence like there was here, these were cash transactions that began and ended at the point of sale, that if you read only one conversation, read trial exhibit 65A, this is the twisting in the up-north conversation. Hamlin essentially offers to do business with Page, and Page turns him down. If there's any really critical piece of evidence that shows what these two were and what they weren't, it's that. That Hamlin really wanted to do business. Hamlin really wanted to get Page to show him how to twist, but Page said no. And the if part of that conversation is showing to the fact that they were not in a conspiracy to begin with. I have no time. Sorry. Thank you. Ms. Tableson. May I please the court, Rebecca Tableson on behalf of the United States. Royal Page was an established heroin dealer who engaged in hundreds of distribution quantity transactions with his buyer. You can probably guess from my questions to Ms. Eisenman, I'm really focused on the evidence. I want to ask you about specific parts of the government's evidence that it put in. The government opened its case by telling the jury that Page purchased distribution quantities of heroin and all these amounts over time. There was a government witness that testified that 45 grams, one of the amounts Page got from Hamlin, is a larger quantity. It wouldn't be for personal use. A different government witness took care to explain that a distribution quantity sold in larger chunks in bigger bags, not in small bags, like personal use. And then also the government elicited testimony about things that personal users commonly possess, straws, spoons, spindles. And then another government witness answered no when asked during direct if he saw any needles, syringes, et cetera, in Page's home. And that he found significant that Page never said to authorities he was getting sick, you know, to establish he wasn't a heroin user. Okay, here's my question. The government repeatedly emphasized that the volume of drugs Page purchased from Hamlin emphasized that volume and that Page didn't personally use drugs. Why would the government emphasize the difference in quantities and disclaim personal use if Page hadn't presented or the evidence hadn't given way to a buyer-seller theory? Because it is the government's burden to prove beyond a reasonable doubt that Hamlin and Page conspired in the further distribution of heroin. And the key evidence proving that were hundreds of distribution quantity transactions. So, you know, transactions that contemplate and require further distribution over a year and a half. Although we've said that those standardized, regularized, repeat things are not evidence of a conspiracy. Our circuit said that. I think two responses. First, I think the circuit case law says that that might not be sufficient in certain cases to prove conspiracy. Second, we do think that the rule under direct sales and under some, albeit not all, of the circuit's cases is that repeated standardized distribution quantity transactions over a period of time that are cooperative are generally evidence of a conspiracy. And in a case like that, like this one, that type of evidence does not warrant a buyer-seller instruction. So I want to take you back because we went down a side road back to what I was asking. And you were answering why the government would be going into personal versus distribution, et cetera, et cetera, if it does not see a buyer-seller issue on the table. I think as the conspiracy instructions required, the government had to prove that Hamlin and Page at least implicitly agreed to work cooperatively to further the distribution of heroin. And, again, the fact that these were distribution quantities and not user quantities was key to that proof. So I think it's fully appropriate that the government elicited that evidence at trial. And, in fact, I think what you're pointing to is the absence really of any evidence that Mr. Page was a user, that he bought user quantities, which is sort of the quintessential evidence of a buyer-seller relationship. Which the jury certainly could have rejected. But Page was also saying I was either a personality, I didn't do it at all, or I was a personal user, or I was distributing to my own customers. So they were still the other. But regardless of what you see, I wasn't in a conspiracy. What about that aspect? We disagree with that characterization of the record. Mr. Page's defense was it wasn't me. He made that defense throughout the case. You know, his cross-examination of Hamlin is an excellent place to look. The cross-examination of Hamlin focused on Hamlin's own credibility, suggesting that it was not Page who was on the phone with Hamlin. The closing argument made the same point. Those arguments were an it-wasn't-me defense. And that defense had the benefit of potentially exonerating Page on all 13 counts he faced. The buyer-seller defense, by contrast, would have pointed to guilt on 12 of the 13 counts that Page faced. Your argument that it was a strategic decision by the defense not to request it? I have no inside information about the defense and his conversations with his counsel, of course, but it certainly could have been. And I think, you know, to Judge Kirsch's question, it is one thing for a defendant to pursue inconsistent defenses at trial. It would be quite another for Judge Scudder to have inserted this inconsistent defense in the case after the close of evidence when Mr. Page had never, in name or in substance, made a buyer-seller argument. It would just confuse. The jury would have no idea what was going on, right? It would be confusing. And, in fact, it would point to guilt on 12 of the 13 counts that Mr. Page faced, which were distribution counts, if he was saying, actually, I was just distributing. And so I could actually see an argument in a different case, obviously, from the defense perspective, that that would be error and that that would prejudice him when he went to trial on an it-wasn't-me defense that understandably could have exonerated him entirely. And I think, you know, that's why counsel, do you mind if we go kind of back and we've circled the wagons a few times around this question? And what we're listening for is the theory of defense of this buyer-seller, right? It wasn't asked for here, and based on your argument, it actually would have contradicted the position that he was putting forth. I am interested, because we're looking at the Douglas case, and for district courts reading this decision, when are we to give this buyer-seller instruction? And we've said, when is the appropriateness of giving the buyer-seller instruction? When is it appropriate? And so we've directed courts, and particularly I'm going to ask you, to look at the specific facts to determine whether the instruction is appropriate. And that's kind of where you started walking us through why in this instance, aside from it was not a part of the theory of defense, what facts would this jury could not have rationally gotten to a buyer-seller. If you could walk me through that, that would be helpful. Absolutely. Before you answer, can I just broaden the question a little bit? What should our law be? Your argument is we should fix all this. Thank you, judges. The evidence, we think, was sufficient to preclude a buyer-seller defense in this case. Specifically, we're talking about hundreds of transactions over a period of a year and a half, a three-month snapshot of those transactions captured on a wiretap. That three-month snapshot showed these two men working in a cooperative way, standardized pricing, volume discounts, and established a verbal code. One example of a return of low-quality heroin, one example of a partial credit sale. I think that evidence, you know, and more, sorry, Hamlin himself testified. Hamlin testified that he and Page were engaged in the business of distributing heroin. He testified that their relationship began because Page was interested in improving his drug distribution business, and that's how Hamlin got involved to help him out with that. So, counsel, let me ask you this. So is the government's position then that no rational jury could have found that Hamlin and Page, based upon this record, had a simple buyer-seller relationship? Is that the government's position? I think, Judge Lee, your question, I can maybe answer the second half of Judge Kirsch's question with yours. The government's position is, under the correct understanding of the buyer-seller doctrine, as reflected in direct sales, no, there was not evidence sufficient to give a buyer-seller instruction. I'm not talking about sufficiency. You've argued sufficiency. The flip side of sufficiency is whether any rational jury would have found for the defendant or would have, from this evidence, come to the conclusion that the defendant and Mr. Hamlin had a buyer-seller relationship. And the government's position is that no rational jury could have found that based upon this evidence. Under the correct standard for the buyer-seller defense, yes, that is. And I'm sorry if the word sufficiency, that's just my misspeaking. But yes, under the correct standard for the buyer-seller defense, which, to answer Judge Kirsch's question, we think it, when there is evidence of repeated standardized cooperative distribution quantity transactions… Hold on. I'm sorry. Hold on. Take the law as it stands now with gee and asky, okay? Based upon that, before we get into the government's view of what the law should be, based upon that, was the government's position that no reasonable jury on these facts would have found that Page and Hamlin were engaged in a mere buyer-seller relationship? I think, Judge Lee, our position under the Seventh Circuit case law as it currently stands is that the prong one inquiry error, which I think is what you're getting at there under plain error, is difficult to answer here because, as this court has repeatedly said, its buyer-seller case law is confusing, and there are a lot of cases that interpret the same factors in different ways. So I guess I'm getting to whether or not a jury, for example, if a defense counsel had requested a buyer-seller instruction and if the court had said no, whether that would have been proper because the standard at that point would be whether any rational jury would have found for the defense on that issue. And if we find that there's evidence from which a rational jury, any rational jury could find that way, then the instruction should have been given. So I guess my question is more to that. Is the government's position that based upon this record and the state of Seventh Circuit law today that no rational jury would have found that there was a mere buyer-seller relationship based upon the facts? I think, Judge Lee, that is the second question. I think that my question originally, where we started, is asking what are the specific facts that would satisfy the question of whether or not a buyer-seller instruction was appropriate, the appropriateness. That's what McGee, that's what AFCU tells us to assess. And so we didn't give you an opportunity to finish answering my question. Absolutely. I think, Judge Lee, the question at prong one is a de novo question. Prong one is asked, was there error putting aside the forfeiture, sort of de novo error? So I think our answer there is under this court's case law, it's difficult to answer that question at prong one because, just to quote the court, it's muddled, it's hard to draw the line, it's fuzzy. So answer to prong one, de novo, as if it had been preserved, hard to say, honestly. Judge Fryer, I want to make sure that I'm fully answering your question, but I think you're asking about the evidence in this case. And you started with volume distribution, and then there was another question that came, and you were walking through evidence of why a jury would not, a jury rationally would not have been confused without a buyer-seller instruction. Yes, thank you. I think what I was about to say, I'm sorry if I did say this and forgot, their relationship, Mr. Hamlin and Mr. Page's entire relationship was predicated on the distribution of heroin. Mr. Hamlin testified that their relationship actually began because a mutual acquaintance told Mr. Hamlin that Mr. Page wanted to improve his heroin distribution game. And then, you know, that's the beginning of the relationship. And then you see that manifested in literally hundreds of recorded phone calls, which were only, by the way, a three-month snapshot of their 18-month relationship here. And, you know, the mere frequency of these transactions also supports a finding of conspiracy. We're talking about literally hundreds of transactions over a year and a half. The way this court has described a buyer-seller relationship, by contrast, is really foreign to this evidence. So I think LeChuga describes it as, you know, arm's length, episodic transactions between people who have no particular interest in what the other is doing. And there is no way that a jury could have listened to the evidence in this case and found, you know, a series of arm's length, episodic transactions that reflect a mere buyer-seller relationship. The Supreme Court in direct sale, as well as our prior cases, kind of, you know, asked us to be careful about drawing a distinction between aiding and abetting and conspiracy, right? And so if a jury relies solely on a number of sales between Hamlin and Page, and that's the only thing they had, what distinguishes that from aiding and abetting? Don't we have to – how do we get to conspiracy from that? And wouldn't a jury then be confused between whether something was aiding and abetting versus conspiracy? I think, you know, if you have a situation where you have, say, a single sale from a conspiracy, that is the type of thing that the Supreme Court, you know, cautioned in direct sales might be more in the aiding and abetting category. I think when you're talking about a series of sales… But in direct sales, there was a series of sales, right? And there were prior cases we've had where there was a series of sales, and the court said, no, no, no, there's no conspiracy here. You have to be careful that – because conspiracy requires more than knowing that this person is going to take the product and do something, right? You have to actually take steps and want that thing to happen. And I guess here I'm trying to figure out if we just – under the new rule that at least the government espoused in its brief, if we say, you know what, in certain circumstances, direct sales is enough to charge conspiracy, how is that consistent with what the Supreme Court told us to be careful about in direct sales? I think the fact that direct sales are really helpful here, Judge Lee, for exactly the reasons you're suggesting. In direct sales, a physician was buying morphine in bulk from a mail-order company and then sort of distributing it illegally. It's what we'd call today a diversion case. And the mail-order company was charged and convicted with an unlawful drug distribution conspiracy. And the mail-order company challenged that. It brought what you'd call today a buyer-seller defense. And the Supreme Court rejected it and said, no, the evidence here is evidence of conspiracy, not a buyer-seller relationship. It explained that when a seller is working in, quote, prolonged cooperation with a buyer to supply him with drugs to resell, that is a conspiracy. And that's why our Brown case teaches us not to compartmentalize, right? That's exactly right. Brown is fully right that it's a totality of the circumstances inquiry. And I want to be clear that the rule that we propose is not a categorical per se rule. It never can or should be. It's always a totality of the circumstances inquiry when you're deciding what defense, how to charge the jury. If we agreed with the government, would we have to overrule our opinion in G? G, I think, G has quite different facts. There was a distribution of non-contraband substance. So I think G does not reflect the same conceptual error that we think is inconsistent with direct sales. That, we think the key case is Cologne that is incorrectly decided under and reasoned under direct sales. G also — That's on the buyer — how you instruct on the buyer-seller as opposed to whether to instruct in the first place. Yes. So in G, on whether to instruct in the first place, would we have to overrule that? I think the different evidence in G would not require — you know, does not come to direct contrast. Because the evidence was so different in G, that case does not come to direct contrast with the government's proposed rule here. The rule we're talking about here is really a rule for drug cases. We're talking about cases where the substance that's distributed is inherently illegal. It's contraband. And in those cases, you know, a relationship like Hamlin's and Page where we have many transactions over time that reflect cooperation, that evidence is evidence of conspiracy when we're talking about drugs. And from the government's view, if a defendant does not ask for a buyer-seller instruction, is there ever a situation where the court should sui sponte raise it? When the defendant does not ask for a buyer-seller instruction, you know, the plain error standard of review applies. And I'm sure there are situations where the prongs of plain error could be met. For example? But in order to avoid that, do you think we should impose some obligation on the district courts to raise the instruction under certain circumstances if the defendant doesn't raise it? And if so, what would those circumstances be? No, I do not think that this court should announce a sort of prophylactic rule that the district court should raise the sui sponte in drug cases. I think that would be procedurally inconsistent with how courts handle jury instructions generally. Don't we already have a rule that applies to this case and it's where the evidence is weak or, you know, inequitables? Then you certainly, a jury could entertain a reasonable doubt on conspiracy. And so those are the situations where you need to give the instruction. Why isn't that rule that we already have sufficient in this case? The rule that an evidence should excuse me, an instruction should be given. If the evidence is sufficient for a jury to find in the defendant's favor on that point, that that is the rule. And it is the same for this type of instruction and any other type of instruction. But then we filter that rule through the plain error analysis when the defendant has not actually requested the instruction. And I think there are potentially cases. This is what I was about to say before. So there are potentially cases where a defendant could satisfy plain error correctly construed when the district judge didn't give a buyer seller instruction. For example, if the defendant in substance presents a buyer seller defense, but then does not actually at the final jury charging conference request the instruction, plain error still applies. And in that circumstance, unlike this one, it is much easier for the defendant to satisfy the prongs of plain error because the record from trial, assuming he's got the evidence for it, will show. Let me ask you about that, this plain prong that you're on right now. At sentencing, the district court made an explicit statement about what was clear to him from the trial testimony. Okay? So he talks about how he heard the evidence during trial. And here's what the district court said. I'll say to you, it was clear to me from hearing the trial evidence that you, Paige, were not about to stop on your own. My impression from the trial evidence, including the wiretap conversations, was that you had built up a pretty reliable customer base. And that if the authority didn't step in and stop this by bringing this case down, that you would have taken Mr. Hamlin up on his offer and suggestion to expand his business, your business together, by looking to sell in new areas. So what he's referring to right there is a core part of what the government's conspiracy evidence was at trial. This idea of them talking about expanding their business up north. Okay? Now, we've already gone through how there's no sale on credit here. You say it's a sale on credit. It's really a store credit, which is not prohibited. It's not evidence of conspiracy under a case law. There's no commission on sales. The evidence about advising each other on the conduct of their business can be interpreted both ways. We've already talked about how our current case law is that regular standardized sales are not evidence of conspiracy. So the government has this one remaining piece of conspiracy evidence if we're looking at the totality. And the district court is saying at sentencing that it was clear to him during trial that that expansion never happened. Why aren't we to take the district court at its word about what was obvious to him as the trial evidence came out that a core part of the government's conspiracy case was a nullity? The up north conversation that you're talking about, I think, is a helpful data point, but not conclusive. What it reflects is that Hamlin and Page were discussing a potential expansion of their work together that didn't ultimately come to fruition. But that does not mean they were not already in a conspiracy. As this court said in LeChuga and Blackletter Law, a conspiracy does not require vertical integration. So the co-conspirators don't have to do everything together. They don't have to twist heroin together. For example, even though they talked about maybe doing so in the future. Instead, here, Page and Hamlin had already, long before this conversation, crossed the line into working cooperatively together to distribute heroin. That is the crux of a conspiracy, and that is what the government proved here. So that up north conversation, including the way judges better characterized it at sentencing, is fully consistent with the finding of conspiracy, and it does not point to a buyer-seller relationship. I think it's also helpful to emphasize how— Counsel, I would like to ask you the same question I asked Ms. Eisenman. Forget about buyer and seller instructions. What is the theory of the United States about when district judges should give instructions in criminal cases that neither side requested? And you can use a lesser-included offense instruction as an example. I mean, I think the general theory of the United States is the theory reflected in—I want to say it's called Matthews from the Supreme Court, which is a jury instruction is warranted when the evidence is sufficient for a jury to find on that point. That's not the question I asked. I agree. I know. And then I think the appellate court answer to your question, Judge Easterbrook, is to apply the standards of plain error review to determine if it was error not to do a spontaneous search of the jury. I deal with the question I asked rather than the question you wish I had asked. I appreciate that, Judge Easterbrook. Perhaps I just don't know the answer to the question that you specifically asked because I'm not sure it's reflected in his law. But that is the question that this court must tackle. Well, I think that— Particular instructions are a subset, which we have to work out a general rule, and then we can apply it to particular instructions. But neither side seems willing to address what the general rule should be of which a buyer and seller instruction is an example. That puts us in a very difficult position. I hope you can see that. I disagree, Judge Easterbrook. I think what this court should do here is what it's done in any other case where the question is, should the district judge have sua sponte, instructed in something? And the way to answer that question from the perspective of a court of appeals is to apply the four prongs of plain error review. No. First, we have to decide whether there is error. One possibility is that unless somebody requests an instruction, there is no error. Now, we have to decide when it could be error without a request in light of the Supreme Court's decision in Shenanigans-Smith. We have to decide that question. We can't just sweep it under the table. I think you can decide that question here by clarifying the correct standards for the buyer-seller doctrine and then establishing that on this record, no judge should have issued the buyer-seller instruction sua sponte. I think that is the answer, at least for the purposes of this case, Judge Easterbrook. And then I think after that, should the court wish to, it can proceed to prongs two, three, and four of the plain error test, which do answer this question in the mine run of cases. I think also, sort of responding to your question, but not as directly as I know you would like, it's important to emphasize how truly conscientious the district judge was in this case. I mean, if you look at the jury instruction charging conference here, we have a district judge, there's no way to read this without the impression that this is a judge who's bending over backwards to protect the defendant's rights. So, for example, the judge himself raised the issue that the standard seventh circuit instruction on a defendant not testifying refers to his, quote, failure to testify. And the judge said, I want to change that to his decision not to testify to avoid any impression on the part of the jury that there's any failure here. And then when the judge issued the instruction… Can I ask a question to follow up on Judge Easterbrook's question? Why is the answer to his question not, it is not error under party presentation to fail to give a theory of the defense instruction if the defendant does not ask for it? And here's why I ask that question. We get lost, and we're forgetting what Judge Scudder did instruct the jury. So when we talk about buyer-seller, is it an affirmative defense? Is it an element the government has to prove? Here's what Judge Scudder instructed the jury, and here's what the government has to prove. The government must prove beyond a reasonable doubt the defendant was aware of the illegal goals of the conspiracy and knowingly joined the conspiracy. That is what the requirement that the government has to prove. That is the requirement. Why is it not the government's position that it's never error for the judge to fail to give an instruction on the theory of the defense if the defendant does not ask for it? We're in the context of what is a relatively simple federal criminal trial, drug conspiracy, buyer-sell, really simple stuff. You get into complicated white-collar fraud trials, and boy, oh boy, for a judge to try to discern the theory of the defense when defense counsel might not have a theory until closing argument. You see how the evidence comes in. See what the witnesses say, and then weave some theory out of the evidence and acquit their defendant. What is it – what are we – why is that not the government's position? Judge Kirsch, I think that rule would benefit the government, certainly. I do think, though – look, we're not asking for it today because we think it's – You don't need it today. You don't need it today, and so what we're asking for today is for the court to apply the established standards for plain error, which we think resolve this case easily. I think the rule that you're proposing, Judge Kirsch, sort of shaves a little bit towards waiver rather than forfeiture in the sense that if the defendant doesn't ask for the instruction, basically he's simply foreclosed from appealing on that basis because it's categorically not error. There might be very good arguments for that from first principles, but today the government is simply asking this court to basically apply the well-established Supreme Court-mandated standards for plain error and also to clarify the court's case law on the buyer-seller doctrine, which has bedeviled the court and district courts, prosecutors, law enforcement agents in the circuit for 20, 30 years. Right. I would like to try to step away from the facts of this case and focus on first principles of the three bodies of law that are implicated by this case. Number one, conspiracy law. Number two, theory of defense law as it relates to jury instructions. And perhaps Rule 30 has something to say on that question because it addresses itself to what must be done to preserve objections about jury instructions and what must be done to request particular jury instructions. But it also provides an escape hatch by reference to Rule 52B, the plain error rule. And so we can integrate those sources of law to come up with an answer to this question. And number three, plain error review. Our case law requires clarification in all three areas because there's something on offer for both sides in all three areas of the law. Conspiracy law in the circuit has gone far afield of direct sales. Direct sales itself does not map well to garden variety drug conspiracy law because it involved a restricted substance, morphine, that is legal to sell within the restrictions prescribed by federal law. Distribution of heroin is everywhere and always unlawful, just like distribution of cocaine, et cetera, is everywhere and always unlawful. So that Supreme Court case, which fleshed out conspiracy doctrines for those purposes but also for broader purposes, needs to be adapted to garden variety drug conspiracies. Our circuit has adapted it in a way that is out of step with every other circuit. We're an outlier in what we've said the government must prove and what the buyer-seller defense or how the buyer-seller defense fits within general conspiracy law. So that requires clarification. And then the theory of defense law requires clarification. And the plain error application to this context requires clarification. And you have 57 seconds to answer that. If you need more time, I'll give it to you because I'm going to give you more time. Okay. First, let me start with direct sales. We think, yes, direct sales involve a, you know, semi-controlled substance, morphine, rather than heroin. But we think that means the logic of direct sales applies even more strongly to a case like this one, heroin, where every single transaction is a crime. So direct sales is drawing a contrast between morphine there and things like sugar and cans that were totally lawful and saying, when you're talking about morphine, the evidence of conspiracy can be smaller in order to prove conspiracy because this substance is so obviously usable, you know, in an illegal way. When we're talking about heroin, it's even more obvious. And, you know, the mutual trust that a buyer and a seller need to engage in these repeated transactions in heroin is heightened because every single transaction is a crime and it's susceptible to prosecution. Second, as to plain error. We think that the prime place in this court's case law for clarification is probably at prong three, where, you know, the law is that a defendant bears the burden of proving a substantial likelihood that the jury would have acquitted had it heard a buyer-seller instruction in a case like this. And I think when you apply the correct standard, which most but not all of this court's cases have done so, cases like this are easy. Mr. Page cannot make that showing, and the same will be true of many similar defendants. We think that, you know, as to the question of theory of defense instructions, you know, at least in this universe of drug conspiracy buyer-seller type cases, we think clarifying the correct standard for the buyer-seller doctrine will actually alleviate a lot of the confusion that you see in theory of defense instruction in these drug conspiracy cases. And we actually think this case is a particularly excellent vehicle to make that clarification because this is a mine-run drug trafficking case. We have a supplier selling to another supplier over a course of time with a wiretap. This evidence is honestly very standard. So if the law can be clear in this case as to buyer-seller doctrine, you know, when that's warranted, when that instruction is warranted, and how plain error applies, we think the law will be clear in many other cases as well. If there are no further questions, I appreciate the extra time. We respectfully ask the court to affirm the judgment below. All right. Thank you very much. Ms. Eisenman, I think you have used all your time or almost all your time. You can have your five minutes restored. Okay, thanks. Very generous of you. Thank you, Judge. Okay. Just going kind of in chronological order, I think, of some of the things that the government addressed. I believe at one point the government said that large quantities are the quintessential evidence of conspiracy. Disagree with that. I believe it's credit or consignment. And that's something that this court, and I believe every other court recognizes, that was not present in this case. So please keep that in mind. That the government wants to take out all of the factors that we currently have and insert its new factors. Please notice that credit consignment is not one of the factors that the government even wants us to look at. Second point, going back to the plain error analysis. Again, I think Judge Jackson-Aquini said it really well. Again, we're looking at was this rule violated, and was the rule violated depends on the evidence presented. And a panel of this court has already found that the evidence is thin. So how can we say that no reasonable jury couldn't have found the same thing? Counsel, on that – Go ahead. No, we're going to ask the same question. On that front, on plain error, give me your reason that you brought up maybe we should suggest certain things to the district court. But what if they don't follow that? If we don't say shall, if we say you really should propose this jury instruction. If they don't, does that call into question the integrity of the proceedings? Does that – what's your conversation with the public? What's Mr. Page's argument for this whole process wasn't fair because they listened to me and I didn't ask for something? So you're – go ahead. Sorry. Plain error, we have discretion. Right? You walk this up to there is error. We have some questions about maybe not getting to error. But even if there's error and it's plain, we're told, hey, now we need to use our discretion. And how should we employ that? And I'm sorry, I missed the first part. You're saying if the district judge did bring this up sua sponte or did not bring it up sua sponte? I'm saying you brought up before that we should suggest to the district court that this process happen where you say, hey, you're sure you don't want the buyer-seller to do this. Yes. Okay. If the district court ignores our suggestion, what's your argument under plain error, your argument that the whole proceedings get called into doubt? Yeah, good question. I think this court has actually gone to that prong quite a bit in its case law and has said that because the buyer-seller instruction is so not intuitive to juries – I know this is not totally relevant. But I asked my mom if she would realize that if you buy drugs from a drug conspiracy that you haven't joined a conspiracy. And she's not a lawyer. She had no idea. She's like, that sounds like you're joining a conspiracy to me. It's that kind of thing where this is not an intuitive distinction. It's not like Greer where if somebody has a felony conviction and has served a year in prison, yes, they know that they're a felon. This is a really not intuitive distinction. And I don't think any circuit finds that it is. And that's something that we've said over and over again, that this is not intuitive. Therefore, we have to let the jury do its job and we have to tell them this rule because otherwise the jury can convict without finding that extra conspiratorial agreement. You could just find that there was an agreement to buy and an agreement to sell without finding that they were working together and used direct sales language cooperatively to further the distribution of drugs. And that affects your substantial rights, and that affects the fairness of the jury trial because he shouldn't have been convicted. Or at least we should have let the jury come to this decision. Because, again, a panel of this court already found the evidence to be extremely thin or comparatively thin. So how can we take this from the jury's determination? This is a jury question. And just to clarify, because I know we've circled around it, you are asking us to impose a rule that a district court must respond to raise the buyer seller instruction with the defense, even if the defense doesn't ask for it in all drug conspiracy cases. If I said the word must, I am not trying to say must. I'm saying this court could suggest that as a way not to get us under Rule 52B a lot in this court. Because then if the government's right, and this is a strategic matter, then defense counsel is going to waive it, right? And then I'm not here. Or, you know, it's a 2255 issue only. So would counsel waive it? Yeah. Identify the strategic. Right, right. Justin Doe won't do. But, you know, I'm suggesting that that that could be a way for district judges to eliminate some of this, some of these issues. I'm not saying that this court should tell district judges that they have to, or that, you know, we can't do the plenary analysis. We can do it. That's what we're doing here. But if this court is frustrated with the plenary analysis and wants to eliminate some of that, that could be a way. Sorry, I'm over again. Thank you so much. We ask that the panel's decision be affirmed, and that the conviction on count one be vacated, and if not, remanded for trial. Thank you. Thank you. Our thanks to all counsel. The case is taken under advice.